# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF TEXAS
# SHERMAN DIVISION

| | | |
|---|---|---|
| KIMBERLY QUILE and JOEL QUILE, | § | |
| | § | |
| Plaintiffs, | § | |
| | § | |
| vs. | § | CIVIL ACTION NO. 4:22-cv-00572 |
| | § | |
| AMGUARD INSURANCE COMPANY, | § | |
| | § | **JURY DEMANDED** |
| Defendant. | § | |

## PLAINTIFFS' ORIGINAL COMPLAINT

Kimberly Quile and Joel Quile, Plaintiffs herein, file Plaintiffs' Original Complaint against AmGuard Insurance Company, and, in support of their causes of action, Kimberly Quile and Joel Quile would respectfully show the Court the following:

## I.
## THE PARTIES

1.    Plaintiffs, Kimberly Quile and Joel Quile, are individuals residing at 214 Inverness Dr., Trophy Club, 76262-5565, Denton County, Texas, which is their true, fixed and permanent home.

2.    Defendant AmGUARD Insurance Company (hereinafter referred to as "AmGuard"), was, and is at the date of this filing, a Pennsylvania insurer with its principal place of business located at 39 Public Square, Wilkes-Barre, Pennsylvania, 18703. AmGuard, therefore, is not a citizen of the state of Texas for diversity purposes. AmGuard may be served via certified mail return receipt requested via its registered agent for service in the state of Texas, C T Corporation System, 1999 Bryan Street, Suite 900, Dallas, Texas 75201-3136.

1

## II.
## JURISDICTION AND VENUE

3. This Court has subject matter jurisdiction of this cause of action under 28 U.S.C. § 1332. Plaintiffs' true, fixed and permanent home is in Denton County, Texas. Therefore, Plaintiffs are citizens of Texas. Defendant is incorporated in Pennsylvania, and has its principal place of business in Pennsylvania, and is thus a citizen of Pennsylvania. Therefore, as Plaintiffs are citizens of Texas, and Defendant is a citizen of Pennsylvania, complete diversity exists. Plaintiffs seek damages in excess of $75,000. Specifically, Plaintiffs seek proceeds from their insurance policy in the amount of $67,321.70, plus attorneys' fees. Further, Plaintiffs allege Defendant knowingly committed the acts complained of herein. As such, Plaintiffs are entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

4. Venue is proper under 28 U.S.C. § 1391 because a substantial part of the events or omissions giving rise to the claims occurred in the Eastern District of Texas, Sherman Division. The property at issue in this cause is in the Eastern District of Texas, Sherman Division.

## III.
## FACTUAL BACKGROUND

5. Kimberly Quile and Joel Quile (collectively, "Quile" or "Plaintiffs") are the named insureds under a property insurance policy issued by AmGuard identified as Policy KIHO168796 ("Policy"). The Policy provided coverage for hail and wind damage to Quile's property located at 214 Inverness Dr., Trophy Club, 76262-5565 ("Property") for the term of the Policy during the time of the date of loss of April 28, 2021.

6. The Property sustained a massive hail and wind event on April 28, 2021, or at all times during the Policy period, causing extensive functional damage to the roofing system and exterior and interior of the Property. A modest review of applicable weather data demonstrates the

Property sustained hail damage from hail measuring at or more than 3.50" in diameter and associated windspeeds of 38 mph. The photographs document the obvious widespread damage to the Property from the covered peril of hail and wind from the storm:











5





6

7. Quile reported this storm and the damage it caused to the Property to AmGuard. AmGuard acknowledged receipt of the claim and commenced its investigation.

8. AmGuard assigned claims representative Priscilla Jones ("Jones") of North American Risk Services ("NARS"), its third-party administrator, to adjust the claim. Upon information and belief, Jones never personally stepped foot on the Property. Instead, Jones retained Jay Palmer ("Palmer") of Eberl Claims Service, an independent adjusting firm that works primarily for insurance companies, to inspect the Property. Palmer visited the Property on June 11, 2021, wherein he failed to conduct a thorough and complete inspection, evidenced, in part, by the fact that he later revised his estimate to account for additional damages missed during his original inspection. Despite the obvious and widespread hail damage at the Property, Palmer represented the damages amounted to a paltry $3,474.99 (RCV). After application of Quile's deductible and subtracting for depreciation, Quile was to receive nothing to repair the extensive damage to the roofing system. What is worse, Jones failed to provide any explanation as to why AmGuard believed the Property had been only minimally damaged by hail or wind.

9. Quile, faced with the reality they might receive $0 from their insurance company for the damage to their Property, turned to National Claims Negotiators ("NCN"), a licensed public adjusting firm, to inspect the Property and render an accurate estimate of the storm-related damage to the Property. On or around December 14, 2021, NCN representative Wes Smith ("Smith") inspected the Property. During this inspection, Smith documented and photographed extensive hail damage to the exterior and interior of the Property. Smith determined the damage to the Property warranted replacement cost coverage of **$67,321.70** under the terms of the Policy. The NCN estimate was provided to AmGuard on December 16, 2021.

10. On December 20, 2021, Palmer revised his original estimate to account for additional damages. However, Palmer's second estimate still fell vastly short of representing the true amount of damages from the April 28, 2021 storm. In total, Palmer represented the full extent of the damages, after subtracting for depreciation, amounted to only $4,703.03. Conveniently for AmGuard, this amount fell just $154.35 shy of Quile's deductible. Again, this meant Quile would receive nothing from AmGuard to perform the necessary repairs to the Property.

11. On December 27, 2021, and again on January 3, 2022, NCN representative Elizabeth Scott ("Scott") contacted NARS representative Darren Lindemann ("Lindemann"), the new adjuster assigned to Quile's claim, and requested that AmGuard reinspect the Property.

12. On January 4, 2022, Lindemann issued correspondence denying the entirety of Quile's claim. In this letter, Lindemann relied entirely on the cosmetic damage exclusion contained in the Policy for the basis of AmGuard's denial. Lindemann included only a copy of Palmer's revised estimate and offered zero explanation as to how AmGuard, by and through NARS, was able to determine that none of the roofing system had been functionally damaged by the April 28, 2021 storm. Instead, Lindemann simply expected Quile to accept AmGuard's improper denial, despite the fact that Lindemann offered no evidence in support of his novel conclusions. Indeed, Lindemann cited to no weather reports, failed to include any photographs of the roofing system, and failed to conduct any testing of the integrity of the roofing shingles. What is worse, Lindemann had never even stepped foot on the Property to observe the damages for himself.

13. On January 10, 2022, Lindemann responded to Scott's reinspection request. Lindemann curtly advised, "We have completed our review of your estimate and our report from the IA. We have thoroughly inspected the property in question. The policy has a Roof surfacing cosmetic damage exclusion as indicated in the letter sent 01/04/2021. As such, no reinspection is

warranted at this time." Again, Lindemann failed to explain how AmGuard had reached its novel determination that the roofing system had not been functionally damaged by hail despite a significant hail storm occurring during the Policy period.

14. Jones and Lindemann, the adjusters assigned to Quile's claim, were improperly trained and failed to perform a thorough investigation of this claim. Specifically, Jones and Lindemann retained a biased adjuster, who conducted substandard inspections of the Property, including spending an inadequate amount of time inspecting the physical Property, failing to inspect all portions of the damaged Property, and failing to conduct any testing before summarily concluding the majority of the Property had not been functionally damaged by wind or hail. Essentially, AmGuard, by and through Palmer, made this determination by simply eyeballing the roof. Further, they failed to properly scope the wind and/or hail damage and failed to provide an adequate estimate of damages to the Property despite there being obvious wind and hail damage. AmGuard was presented with obvious evidence of wind and hail damage—yet, without conducting any investigation or evaluation of the widespread hail damage and without ever personally inspecting the Property, Jones and Lindemann determined there was only minimal hail damage to Quile's Property.

15. The inadequacy of the AmGuard inspection and investigation is further evidenced by its failure to give Quile an adequate explanation as to why AmGuard believed there was only minimal hail and wind damage to the shingles. AmGuard never explained what it believed caused the obvious damage to the roof surface, as documented and photographed by NCN.

16. Although AmGuard, Jones, and Lindemann were aware of Quile's clear and present hail and wind damage and the reported damage was covered by the Policy, they decided the claim should be improperly denied without conducting a thorough and reasonable inspection of the

9

damages. Their inadequate investigation of the claim was relied upon by AmGuard in this action and resulted in Quile's claim being improperly undervalued, under scoped, and under paid. After requesting AmGuard reconsider its improper investigation and denial and consider photographs of hail damage and a line-by-line estimate from a licensed public adjuster, AmGuard simply kept its valuation of damages minimal, conveniently determining the majority of the obvious damage to the Property was not caused by wind or hail. Again, this meant Quile would receive zero payment to perform the necessary repairs to the Property.

17.  AmGuard, along with its personnel, failed to thoroughly review and properly oversee the work of the assigned claims representative and adjusters, including Jones and Lindemann, ultimately approving an improper adjustment of and an inadequate and improper denial of Quile's claim. AmGuard misrepresented to Quile the majority of the damages were not covered, when the losses in fact were clearly covered causes of loss during the Policy's period. Specifically, AmGuard represented to Quile none of the damage in excess of the Policy's deductible was caused by a covered cause of loss within the Policy period without any investigation when, in fact, AmGuard knew, or with a reasonable investigation should have known, that the cost of repairs to all the damages in excess of the Policy's deductible was a clear covered loss. AmGuard, in denying the claim without conducting a reasonable investigation, conducted no analysis of weather data, did not take any core samples and did not conduct any testing to determine whether the numerous dents in the roofing surface constituted functional damage, thereby warranting coverage, despite the occurrence of leaks that were consistent with the timing of the loss.

18.  Together, AmGuard, Jones, and Lindemann set out to deny properly covered damages. Because of this unreasonable investigation and failure to provide adequate coverage for

the damages sustained, Quile's claim was improperly adjusted, and Quile was denied payment to repair the Property. To this date, Quile has yet to receive any payment under the insurance Policy.

## IV.
## CAUSES OF ACTION

19. Each of the foregoing paragraphs is incorporated by reference in the following:

**A.  Breach of Contract**

20. AmGuard had a contract of insurance with Plaintiffs. AmGuard breached the terms of that contract by wrongfully denying the claim, and Plaintiffs were damaged thereby.

**B.  Prompt Payment of Claims Statute**

21. The failure of AmGuard to pay for the loss and/or to follow the statutory time guidelines for accepting or denying coverage constitutes a violation of Section 542.051 *et seq.* of the Texas Insurance Code.

22. Plaintiffs, therefore, in addition to Plaintiffs' claim for damages, are entitled to statutory interest and attorneys' fees as set forth in Section 542.060 of the Texas Insurance Code.

**C.  Bad Faith/Deceptive Trade Practices Act ("DTPA")**

23. Defendant is required to comply with Chapter 541 of the Texas Insurance Code.

24. Defendant violated Section 541.051 of the Texas Insurance Code by:

   (1) making statements misrepresenting the terms and/or benefits of the Policy. As referenced above, AmGuard mispresented coverage for wind and hail damage to the Property during the Policy period was a covered cause of loss and misrepresented to Quile the coverage's terms.

25. Defendant violated Section 541.060 by:

   (1) misrepresenting to Plaintiffs a material fact or Policy provision relating to coverage at issue;

(2) failing to attempt in good faith to effectuate a prompt, fair, and equitable settlement of a claim with respect to which the insurer's liability had become reasonably clear;

(3) failing to promptly provide to Plaintiffs a reasonable explanation of the basis in the Policy, in relation to the facts or applicable law, for the insurer's denial of the claim or offer of compromise settlements of the claim;

(4) failing within a reasonable time to affirm or deny coverage of the claim to Plaintiffs or submit a reservation of rights to Plaintiffs; and

(5) refusing to pay the claim without conducting a reasonable investigation with respect to the claim. As referenced above, AmGuard failed to meet its statutory timelines governed by the Texas Insurance Code, failed to respond to multiple requests for information, failed to disclose information it relied on in its investigation, failed to conduct testing of the damage, and failed to allocate damage occurring during the Policy.

26. Defendant violated Section 541.061 by:

(1) making an untrue statement of material fact;

(2) failing to state a material fact necessary to make other statements made not misleading considering the circumstances under which the statements were made; and

(3) making a statement in a manner that would mislead a reasonably prudent person to a false conclusion of a material fact. As referenced herein, Defendant misrepresented wind and hail damage that occurred during the Policy was not a covered loss and failed to provide requested information

used to render its claim decision, and claimed the damage was not caused by a covered cause of loss without conducting a reasonable investigation.

27. At all material times hereto, Plaintiffs were consumers who purchased insurance products and services from Defendant.

28. Defendant has violated the Texas DTPA in the following respects:

(1) Defendant represented that the agreement confers or involves rights, remedies, or obligations which it does not have, or involve, or which are prohibited by law;

(2) AmGuard failed to disclose information concerning goods or services which was known at the time of the transaction when such failure to disclose such information was intended to induce the consumer into a transaction that the consumer would not have entered into had the information been disclosed; and

(3) AmGuard, by accepting insurance premiums but refusing without a reasonable basis to pay benefits due and owing, engaged in an unconscionable action or course of action as prohibited by Section 17.50(a)(1)(3) of the DTPA in that AmGuard took advantage of Plaintiffs' lack of knowledge, ability, experience, and capacity to a grossly unfair degree, that also resulted in a gross disparity between the consideration paid in the transaction and the value received, in violation of Chapter 541 of the Texas Insurance Code.

29. Defendant knowingly committed the acts complained of herein. As such, Plaintiffs are entitled to exemplary and/or treble damages pursuant to the DTPA and Texas Insurance Code Section 541.152(a)-(b).

**D.  Breach of the Duty of Good Faith and Fair Dealing**

30. Defendant AmGuard's conduct constitutes a breach of the common law duty of good faith and fair dealing owed to Plaintiffs.

31. Defendant AmGuard's failure, as described above, to adequately and reasonably investigate and evaluate Plaintiffs' claim, although, at that time, Defendant AmGuard knew or should have known by the exercise of reasonable diligence that its liability was reasonably clear, constitutes a breach of the duty of good faith and fair dealing.

## V.
## KNOWLEDGE

32. Each of the acts described above, together and singularly, was done "knowingly" as that term is used in the Texas Insurance Code and was a producing cause of Plaintiffs' damages described herein.

**E.  Attorneys' Fees**

33. Plaintiffs engaged the undersigned attorney to prosecute this lawsuit against Defendant and agreed to pay reasonable attorneys' fees and expenses through trial and any appeal.

34. Plaintiffs are entitled to reasonable and necessary attorneys' fees pursuant to Texas Civil Practice and Remedies Code Sections 38.001-38.003 because Plaintiffs are represented by an attorney, presented the claim to Defendant, and Defendant did not tender the just amount owed before the expiration of the 30th day after the claim was presented.

35. Plaintiffs further pray that Plaintiffs be awarded all reasonable attorneys' fees incurred in prosecuting Plaintiffs' causes of action through trial and any appeal pursuant to Sections 541.152 and 542.060 of the Texas Insurance Code.

## VI.
## CONDITIONS PRECEDENT

36. All conditions precedent to Plaintiffs' right to recover have been fully performed or have been waived by Defendant.

## VII.
## PRAYER

37. WHEREFORE, PREMISES CONSIDERED, Kimberly Quile and Joel Quile pray that, upon final hearing of the case, they recover all damages from and against Defendant that may reasonably be established by a preponderance of the evidence, and that Kimberly Quile and Joel Quile be awarded attorneys' fees through trial and appeal, costs of court, pre-judgment interest, post-judgment interest, and such other and further relief, general or special, at law or in equity, to which Kimberly Quile and Joel Quile may show themselves to be justly entitled.

Respectfully submitted,

*/s/ Christopher P. Peirce*
Jeffrey T. Embry
Bar Number: 24002052
Margaret C. Pennell
Bar Number: 24046604
Hossley Embry, LLP
515 S. Vine Ave.
Tyler, Texas 75702
Telephone No. 903-526-1772
Telecopier No. 903-526-1773
jeff@hossleyembry.com
meg@hossleyembry.com

AND

Christopher P. Peirce
Bar Number: 24041509
Hossley Embry, LLP
14241 Dallas Pkwy, Suite 240
Dallas, Texas 75254
Telephone No. 214-390-2349
cpeirce@hossleyembry.com

**ATTORNEYS FOR PLAINTIFFS**